**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KENTUAN LANIER XAVIER SHAKKUR ROUSE, individually and on behalf of all other persons similarly situated<br><br>Plaintiff,<br><br>v.<br><br>1 LIFE FIRE SAFETY, CORP., ABC FIRE LIFE SAFETY INC., CLIFTON DUGGAN, and AGYEI DUGGAN,<br><br>Defendants. | Case No.: 24-CV-4850<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Kentuan Lanier Xavier Shakur Rouse ("Mr. Rouse") by and through his attorneys, Danny Grace PLLC as and for his Complaint in this action against Defendants 1 Life Fire Safety, Corp. ("1 Life"), ABC Fire Life Safety Inc., ("ABC Fire"), Clifton Duggan, ("C-Duggan"), and Agyei Duggan, ("A-Duggan") (collectively "Defendants") alleges upon personal knowledge and upon information and belief as to the matters as follows:

**NATURE OF THE CLAIMS**

1.  This action is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. §§206 et. seq. ("FLSA") and New York Labor Law, Article 6 §§ 190 et seq., ("NYLL") to recover unpaid wages and damages resulting from Defendants' failure to pay overtime wages to Mr. Rouse, and all similarly situated individuals who were formerly or are presently employed by Defendants 1 Lift Fire Safety, Corp., ABC Fire Life Safety Inc., Clifton Duggan and Agyei Duggan. As a result of Defendants' violation of the NYLL and FLSA, Plaintiff, and all similarly situated individuals are entitled to (a) the full amount of underpayment, (b) attorneys' fees and costs, (c) prejudgment

1

interest, and (d) an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

2. This action is also for declaratory, injunctive, and equitable relief, as well as monetary damages, to redress unethical and unlawful employment practices against Plaintiff and all similarly situated individuals in violation of the FLSA and NYLL.

3. Plaintiff was an employee of Defendants 1 Lift Fire Safety, Corp., ABC Fire Life Safety Inc., Clifton Duggan and Agyei Duggan.

4. Defendants 1 Lift Fire Safety, Corp. and ABC Fire Life Safety Inc., their subsidiaries and owners benefitted from the services of Plaintiff and all similarly situated individuals, without fully compensating them.

5. Upon information and belief, individual Defendants Clifton Duggan and Agyei Duggan serve as owner, manager, principal, or agent of Defendants 1 Lift Fire Safety, Corp. and ABC Fire Life Safety Inc., with a mailing address at 2750 Holland Ave Bronx, NY 10467-8710 and 23308 Mentone Ave Rosedale, NY 11422-1912, respectively.

6. At all times relevant to this Complaint, Defendants maintain a policy and practice of failing to pay overtime wages, as required by federal and state law and regulations.

7. At all times relevant to this litigation, Defendants maintained a policy and engaged in the practice of withholding wages earned by Plaintiff and the members of the putative class and collective in violation of the FLSA and NYLL.

8. By reason of Defendants' failure to pay Plaintiff and members of the putative class and collective duly earned wages, Defendants are liable to Plaintiff and members of the putative class and collective for damages incurred as a result of the failure to pay all wages, plus accruing

interest, liquidated damages, and attorney's fees, no part of which has been paid though duly demanded.

9. Defendants' conduct was knowing, malicious, willful, and wanton, and showed a reckless disregard for Plaintiff, which has caused and continues to cause economic and non-economic damages, including Plaintiff's severe mental anguish and distress.

10. Plaintiff has initiated this action on his own behalf, and on behalf of all similarly situated employees, seeking unpaid wages and benefits that he and all similarly situated employees were deprived of, plus interest, liquidated damages, attorney's fees and costs.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1337 as this action is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 207 *et seq.* ("FLSA").

12. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

13. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

14. Venue is proper in the United States District Court, Eastern District of New York, pursuant to 28 U.S.C. § 1391, because Defendants 1 Lift Fire Safety, Corp., ABC Fire Life Safety Inc., Clifton Duggan and Agyei Duggan regularly transact business in the district and because a substantial part of the events or omissions giving rise to this action occurred in this district.

## PARTIES

15. Plaintiff Kentuan Rouse resides in the State of New York and began his employment with Defendants in or around November 2021.

16. Defendant 1 Lift Fire Safety, Corp., ABC Fire Life Safety Inc. is a domestic business corporation and is incorporated under Section 402 of the Business Corporation Law with the Secretary of the State of New York, and with headquarters located at in 3256 Steinway St, Fl 2, Astoria, NY 11103.

17. Defendant ABC Fire Life Safety Inc. is a domestic business corporation and incorporated under Section 402 of the Business Corporation Law with the Secretary of the State of New York, and with headquarters located at 3272 Steinway Street, Astoria, New York, 11103.

18. Upon information and belief, individual Defendant Clifton Duggan ("C-Duggan") serves, or served as owner, manager, principal, or agent of Defendants 1 Lift Fire Safety, Corp. and ABC Fire Life Safety Inc., with a mailing address at 2750 Holland Ave Bronx, NY 10467-8710.

19. Upon information and belief, individual Defendant Agyei Duggan ("A-Duggan") serves, or served as owner, manager, principal, or agent of Defendants 1 Lift Fire Safety, Corp. and ABC Fire Life Safety Inc., with a mailing address at 23308 Mentone Ave Rosedale, NY 11422-1912.

20. Upon information and belief, Defendants C-Duggan and A-Duggan possess operational control over both Defendants 1 Lift Fire Safety, Corp. and ABC Fire Life Safety Inc. They also control significant functions of Corporate Defendants. They also determine the wages and compensation of the employees of Defendants, including Plaintiff Rouse, establish the schedules of employees, maintain employee records and have the authority to hire and fire employees.

21. Defendant C- Duggan is sued individually in his capacity as owner, officer and/or agent of Defendants 1 Lift Fire Safety, Corp. and ABC Fire Life Safety Inc.

22. Defendant A- Duggan is sued individually in his capacity as owner, officer and/or agent of Defendants 1 Lift Fire Safety, Corp. and ABC Fire Life Safety, Inc.

23. When Plaintiff was working for Defendants, he was required to report to individual Defendants C- Duggan and A- Duggan.

24. The FLSA defines "employee" to include any person acting directly or indirectly in the interest of an employer in relation to an employee, and an employee is anyone who is suffered or permitted to work. As a result, including as further described below, Defendants are liable as "employer" under the FLSA.

25. Upon information and belief, Defendants 1 Lift Fire Safety, Corp.'s annual gross volume of sales made, or business done, is more than $500,000.00, and further, during Plaintiff's employment with Defendants, he routinely engaged in activities which facilitated or were related to interstate commerce while on the job.

26. Upon information and belief, Defendant 1 Lift Fire Safety, Corp. is engaged in interstate commerce, including handling and working with goods or materials that have been moved in or produced for interstate commerce.

27. At all relevant times, Defendants met the definition of an "employer" under all applicable statutes. Upon information and belief, Defendant ABC Fire Life Safety Inc.'s annual gross volume of sales made, or business done, is more than $500,000.00, and further, during Plaintiff's employment with Defendants, he routinely engaged in activities which facilitated or were related to interstate commerce while on the job.

28. Upon information and belief, Defendant ABC Fire Life Safety, Inc. is engaged in interstate commerce, including handling and working with goods or materials that have been moved in or produced for interstate commerce.

29. Defendants constitute an integrated enterprise under the single employer liability theory.

30. Plaintiff was required to fill out application forms for his employment with Defendants 1 Lift Fire Safety, Corp. and ABC Fire Life Safety Inc. Thus, Plaintiff was an employee of both Corporate Defendants.

31. Upon information and belief, Corporate Defendants are both owned by individual Defendants.

32. Upon information and belief, Corporate Defendants had similar or the same clients.

33. Upon information and belief, Corporate Defendants are managed and operated by individual Defendants.

34. Upon information and belief, Corporate Defendants share employees, including Plaintiff.

35. Upon information and belief, Corporate Defendants share the same management, including individual Defendants.

36. Defendants also have centralized control of their labor relations. Upon information and belief, Defendants have the same human resources department, and A-Duggan and C-Duggan oversee the labor relations of Defendants.

37. Upon information and belief, individual Defendants A- Duggan and C-Duggan have authority to decide the employees' salary and the method of payment, as well as how often they should be paid.

38. At all relevant times, Defendants A- Duggan and C- Duggan decided Plaintiff's pay rate and how often Plaintiff should be paid.

**FLSA COLLECTIVE ACTION & RULE 23 CLASS ACTION ALLEGATIONS**

39. This action is properly maintainable as a collective action pursuant to FLSA 29 U.S.C. § 216(b) and as a Class Action under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").

40. Plaintiff's collective claims arising under federal law are brought on behalf of himself and a collective consisting of individuals who currently or formerly worked for Defendants ("FLSA Collective" or "Putative Collective").

41. At all relevant times, Plaintiff and other members of the FLSA collective action and class action under Rule 23 were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay the Plaintiff the required wages for work under the FLSA.

42. The claims of Plaintiff stated herein are similar to those of the other employees.

43. Plaintiff's class claims arising under New York State law are brought on behalf of himself and a class consisting of individuals who currently or formerly worked for Defendants within the state of New York for a period of six (6) years prior to filing this Complaint ("Rule 23 Class" or "Putative Class").

44. Plaintiff and members of the putative class and collective are all victims of the Defendants' common policy and/or plan to violate the FLSA and NYLL by failing to pay its Employees/Providers for all hours worked pursuant to the FLSA and NYLL.

45. Defendants had a policy and practice of failing to pay their Employees for all hours worked, which has resulted in Plaintiff and members of the putative class and collective not earning minimum wages under FLSA and NYLL.

46. Defendants had a policy and practice of failing to pay overtime to Plaintiff and members of the putative class and collective.

47. Mr. Deron Gray was a former employee of Defendants, and he filed a complaint against Defendants 1 Life Fire Safety, C-Duggan and A- Duggan for failure to pay overtime and wages with Supreme Court of the State of New York County of Queens, case number 721313/2022.

48. Upon information and belief, another three former employees of Defendants were terminated because they asked to be paid unpaid wages.

49. The putative class is so numerous that joinder of all members is impracticable. The size of the putative class is believed to be in excess of forty (40) employees.

50. The questions of law and fact common to the putative class predominate over any questions affecting only individual members. The questions of law and fact include but are not limited to: (1) whether Defendants failed to pay Plaintiff and putative class members for all hours worked; (2) whether Defendants failed to pay Plaintiff and putative class members overtime pay; and (3) whether Defendants retaliated against Plaintiff and putative class members for complaining of the aforementioned violations.

51. The claims of Plaintiff are typical of the claims of the putative class members. Plaintiff, like all members of the putative class, was subject to Defendants' policies and willful practice of refusing to pay employees for all hours worked and refusing to pay overtime. Plaintiff and the putative class members have sustained similar injuries as a result of Defendants' actions.

52. Plaintiff and his counsel will fairly and adequately protect the interests of the putative class. Plaintiff has retained counsel experienced in complex litigation.

53. A class action is superior to other available methods for the fair and efficient adjudication of this controversy over unpaid wages. A class action will prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to Defendants' common policies.

## FACTUAL ALLEGATIONS

54. Plaintiff Kentuan Rouse ("Rouse") began his employment with Defendants 1 Lift Fire Safety, Corp. ("1 Life"), ABC Fire Life Safety Inc., ("ABC Fire"), Clifton Duggan, ("C-Duggan"), and Agyei Duggan, ("A-Duggan") (collectively "Defendants") in or around November 2021, and his workplace was located at 3256 Steinway St, FL2, Astoria, NY11103.

55. In or around March 2022, Plaintiff began working for Defendants as a "Collection Agent."

56. Throughout Plaintiff's employment, Defendants have retained the absolute right to control and direct Plaintiff's job duties and the determine the manner in which Plaintiff performed his services. Defendants also retained complete authority to evaluate Plaintiff's performance.

57. Plaintiff was on the Defendants' payroll.

58. Defendants have the authority to hire or terminate Plaintiff's employment with Defendants

59. During the entirety of his employment, Plaintiff has had no authority to delegate work and projects to others. Defendants retained the final say in deciding who worked on what and when.

60. During the entirety of his employment, Defendants would communicate to Plaintiff what work should be done and evaluate Plaintiff's work.

61. During the entirety of his employment, Plaintiff did not have any independent opportunity for profit or loss, nor did he have any investment in Defendants' business.

62. Employment with Defendants is Plaintiff's only source of income and thus failure to pay him what he is owed has resulted in undue hardship to Plaintiff.

63. During the entirety of his employment, Plaintiff was a satisfactory employee.

64. Defendants employed Plaintiff and the members of the putative class and collective to perform services.

65. During the entirety of his employment, the services of Plaintiff and members of putative class and collective were an integral part of Defendants' business.

66. Like Plaintiff, members of the putative class and collective worked for Defendants as employees and Defendants benefited from their services as employees.

67. Throughout Plaintiff's employment, Plaintiff was an hourly rate employee, and his hourly rate was $27.50.

68. Defendant C-Duggan also promised Plaintiff that he would receive his earned and duly owed commissions.

69. Defendant C-Duggan originally promised Plaintiff that he was entitled to 10% commissions for his collections exceeding $30,000 per month. He then changed the percentage to 3%.

70. Defendant failed to pay the promised commissions and blocked Plaintiff's access to QuickBooks, which is necessary to calculate the commissions Defendants owed to Plaintiff.

71. While employed by Defendants, Plaintiff was not exempt under the FLSA and NYLL. Plaintiff and members of the putative class and collective were entitled to overtime pay.

72. Throughout Plaintiff's employment, Plaintiff received bi-weekly checks from Defendant A-Duggan.

73. Defendants did not provide Plaintiff with overtime pay when he worked in excess of forty (40) hours per week.

74. Defendants intentionally violated the FLSA and NYLL and refused to pay Plaintiff overtime pay and retaliated against Plaintiff for complaining about the aforementioned violations.

75. Like Plaintiff, members of the putative class and collective were not paid overtime[1].

76. From November 11, 2021, to March 21, 2023, Plaintiff worked for Defendants five (5) days per week from 7:25 a.m. to 6:00 p.m. per Defendants' request.

77. Thus, Plaintiff worked 52.9 hours for Defendants per week, and therefore, Plaintiff is entitled to overtime pay for 12.9 hours per week.

78. Defendants set up Plaintiff's work schedules.

79. Defendants consistently failed to pay Plaintiff at a rate of one and one-half times his regular hourly rate of pay for all hours worked in excess of forty (40) hours, in violation of the FLSA and the NYLL.

80. Specifically, Defendant merely paid Plaintiff's first forty working hours at the hourly rate of $27.50; Plaintiff' actual weekly working hours are 52.9.

81. On February 18, 2022, A-Duggan agreed that Plaintiff's wages would be $27.5 per hour plus commission fees. See **Exhibit 1**.

82. Specifically, his base salary would be $1,100.00 per week, equal to $27.5 per hour; and he would receive a 3% commission of anything earned in excess of his minimum quota of $10,000.00 per week.

---

[1] Indeed, at least one former employee of Defendant 1 Life Fire Safety, Corp. filed a complaint against Defendants for their failure to pay wages and overtime payment with the Supreme Court of the State of New York, County of Queens, on October 11, 2022, Index No. 721313/2022.

83. Defendants failed to pay Plaintiff commission fees and overtime payments during the entirety of his employment.

84. From November 11, 2021, to March 21, 2023, Plaintiff worked for Defendants, approximately seventy-one (71) weeks.

85. Plaintiff earned commission fees each month but Defendants failed to pay Plaintiff those duly earned commissions.

86. On March 16, 2022, Plaintiff informed Defendants that for the month of March 2022, he had collected a total amount of $41,415.03.

87. For the week of April 1, 2022, Plaintiff collected the total amount of $26,100.07 for Defendants. Thus, Plaintiff is entitled to commission fees in the amount of $483.00. Please See **Exhibit 2**.

88. On July 12, 2022, one of Plaintiff's colleagues filed a complaint on behalf of Plaintiff as to Plaintiff's unpaid commission fees and asked that Plaintiff email a breakdown of his earnings

89. When Plaintiff originally asked about his commission and unpaid wages, Defendant A-Duggan stated that he would like to speak to his father, Defendant C-Duggan.

90. Defendant A-Duggan continually failed to pay Plaintiff his earned commissions and wages.

91. Thus, Plaintiff contacted Defendant C-Duggan. In response, C-Duggan stated that he would like to speak to A-Duggan.

92. Defendant A-Duggan expressed to Plaintiff that Defendants were unable to pay Plaintiff commissions, overtime and his annual promotion, as well as his bonus. In spite of this, Defendant A-Duggan directed Plaintiff to hire more candidates for Defendants.

93. Thus, Defendants violated the NYLL and FLSA and failed to pay Plaintiff overtime in the amount of $30,224.70 (71 x $425.70) and unpaid wages in an amount to be determined at trial as Defendants did not allow Plaintiff to access QuickBooks[2].

94. On December 2, 2022, Plaintiff filed a complaint and asked Defendants to allow him to access QuickBooks to no avail.

95. In March 2023, Plaintiff gave a statement regarding a former employee's own lawsuit regarding Defendants' failure to pay overtime.

96. Plaintiff also asked Defendants to pay his earned, overdue commission fees.

97. On March 13, 2023, Plaintiff filed a complaint with Defendants as to their violations of the related laws and reminded Defendants that if they fail to withhold taxes from employees' wages, A-Duggan could be held personally liable for the money by state and federal agencies and that penalties could be assessed based on how many days the payment was late.

98. On or around March 16, 2023, Defendants suspended Plaintiff for alleged security breaches in Defendants' QuickBooks.

99. Indeed, QuickBooks' customer service told Plaintiff that Defendant A-Duggan had locked Plaintiff out.

100. On March 23, 2023, Defendants terminated Plaintiff without any given reason.

101. Defendants terminated Plaintiff solely in retaliation for his complaint of unpaid wages and overtime wages, as well as his request for an increase in wages.

102. Further, Defendants did not provide Plaintiff with an accurate written notice regarding: his regular rate of pay, overtime rate of pay, how he was to be paid, his "regular

---

[2] Defendants blocked Plaintiff's access to QuickBooks beginning in March 2022. Plaintiff attempted to track his collections to calculate commission fees.

13

payday," the official name of the employer and any other names used for business, the address and phone number of the employer's main office or principal location, and allowances taken as part of the minimum wage (including, inter alia, tips).

103. Further, Defendants willfully failed to withhold sufficient income taxes and, thus, Plaintiff received a notification from the IRS stating that Plaintiff owed more than three thousand dollars in taxes as a result of Defendants' violation of related laws.

104. Not only was Defendants' conduct unlawful, but it has also caused, and continues to cause Plaintiff and members of the putative class and collective significant economic damages.

105. This Complaint ensues.

## FIRST CAUSE OF ACTION
### (Failure to Pay Overtime - Violations of the FLSA)

106. Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

107. Plaintiff's employment was controlled and directed by Defendants; the services rendered by Plaintiff were and are an integral part of Defendants' business.

108. For the entirety of his employment, Plaintiff's work schedule and hours were made by Defendants. Defendants control the manner of Plaintiff's performance.

109. The economic realities of Plaintiff and Defendants' relationship is such that Plaintiff is dependent on Defendants for employment and Plaintiff provides services as an employee.

110. At all relevant times, Defendants failed to pay Plaintiff and members of the putative class for all hours that they worked in violation of FLSA §785.33.

111. At all relevant times, Defendants failed to pay Plaintiff and members of the putative class overtime payments when their weekly working hours exceeded forty (40) hours.

112. Defendants have a common policy of refusing to pay overtime.

113. Defendants' failure to pay Plaintiff and members of the putative collective their rightfully owed compensation was willful.

114. As a direct and proximate result of Defendants' unlawful conduct in violation of the FLSA, Plaintiff has suffered and continues to suffer severe economic damage, mental anguish and emotional distress, including, but not limited to, depression, and injury, for which he is entitled to an award of monetary damages, penalties, liquidated damages, attorney's fees, and other relief.

115. For the foregoing reasons, Defendants are liable to Plaintiff and members of the putative collective in an amount to be determined at trial, plus liquidated damages, interest, attorney's fees and costs.

**SECOND CAUSE OF ACTION**
**(Failure to Pay Overtime - in Violation of NYLL)**

116. Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

117. At all relevant times, Plaintiff and members of the putative class are employees as defined by NYLL; Defendants are an employer as defined by NYLL.

118. At all relevant times, Plaintiff and members of the putative class worked for more than forty (40) hours per week for Defendants.

119. Defendants have a common policy of refusing to pay overtime.

120. The hourly rate that Plaintiff, members of the putative class and Defendants agreed upon constitutes "wages" within the meaning of NYLL §§ 190 and 191.

121. Defendants failed to pay Plaintiff and members of the putative class overtime in contravention of NYLL, which expressly requires all employers to pay their workers within appropriate time frames, including overtime compensation.

122. In failing to pay Plaintiff and members of the putative class overtime for each hour worked beyond forty hours, Defendants violated NYLL §§ 190, 191, and 198.

123. Upon information and belief, Defendants' failure to pay Plaintiff and members of the putative class for overtime was willful and not in good faith. For the foregoing reasons, Defendants have violated NYLL § 190, et seq. and are liable to Plaintiff and members of the putative class in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees, and costs.

**THIRD CAUSE OF ACTION**
**(Failure to Provide Wage Notices - in Violation of NYLL)**

124. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

125. The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL §195-1(a).

126. Defendants intentionally failed to provide notice to Plaintiff and the members of putative class and collective in violation of NYLL §195, which requires all employers to provide

written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on his or her first day of employment.

127. Defendants not only did not provide notice to Plaintiff and the members of putative class and collective at the time of hiring, but also failed to provide notice to Plaintiff and the members of putative class and collective even after the fact.

128. Due to Defendants' violations of NYLL, Plaintiff and the members of the putative class and collective are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorney's fees pursuant to NYLL. NYLL §198(1-b).

## FOURTH CAUSE OF ACTION
**(Failure to Pay Commissions – In Violation of NYLL)**

129. Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

130. At all relevant times, Plaintiff is an employee as defined by NYLL; Defendants are an employer as defined by NYLL.

131. The hourly rate and commissions that Plaintiff and Defendants agreed upon constitute "wages" within the meaning of NYLL §§ 190 and 191.

132. Defendants failed to pay Plaintiff commissions in contravention of NYLL, which expressly requires all employers to pay their workers within appropriate time frames.

133. In failing to pay Plaintiff the agreed upon wage for his commissions, Defendants violated NYLL §§ 190, 191, and 198.

134. Upon information and belief, Defendants' failure to pay Plaintiff for all wages earned was willful and not in good faith. For the foregoing reasons, Defendants have violated

NYLL § 190, et seq. and are liable to Plaintiff in an amount to be determined at trial, plus liquidated damages, interest, attorney's fees, and costs.

## FIFTH CAUSE OF ACTION
### (Retaliation & Wrongful Termination – In Violation of NYLL)

135. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length. The NYLL and supporting regulations prohibit employers from retaliating against employees. NYLL §215 (1)(a).

136. Defendants have violated the NYLL by terminating Plaintiff and putative class members in retaliation for his complaint of unpaid wages and unpaid overtime.

137. Defendants have also violated the NYLL by terminating Plaintiff and putative class members in response to Plaintiff's complaint that Defendants violated the related tax laws, as well as the NYLL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, for himself and on behalf of the putative class and collective, prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A. An award declaring that Defendants engaged in unlawful employment practices prohibited by the Fair Labor Standards Act and New York State Labor Law by failing to pay Plaintiff and the members of putative class and collective overtime pay;

B. An award declaring that Defendants engaged in unlawful employment practices prohibited by the NYLL by failing to provide proper wage notices;

C. An award of damages to Plaintiff and the members of putative class and collective for unpaid wages, including overtime pay, in an amount to be proven at trial;

D. An award of damages to Plaintiff and the members of putative class and collective for Defendants' failure to provide proper wage notices, in an amount to be proven at trial;

  E. An award of liquidated damages to Plaintiff and the members of the putative class and collective for unpaid wages in an amount to be proven at trial;

  F. An award of damages to Plaintiff for Retaliation under the NYLL;

  G. An award of compensatory damages for Plaintiff's mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven at trial;

  H. An award of Plaintiff's attorney's fees, costs, and expenses incurred in the prosecution of this action; and

  I. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: July 12, 2024
  New York, New York      Respectfully submitted,

                DANNY GRACE PLLC
                *ATTORNEYS FOR PLAINTIFF*
                225 BROADWAY, SUITE 1200
                NEW YORK, NY 10007
                (212) 202-2485

                _____
                DANIEL GRACE
                YUTING LI